**WO**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Joe Hand Promotions Incorporated, | No. CV-25-01821-PHX-DWL |
| Plaintiff, | **ORDER** |
| v. | |
| Vortez LLC, et al., | |
| Defendants. | |

Pending before the Court is Plaintiff's motion for leave to serve Defendants Christian Abran Vasquez-Cortez ("Vasquez-Cortez"), Celeste Florentina Lopez ("Lopez"), and Vortez LLC ("Vortez") via alternative means. (Doc. 16.) For the reasons that follow, the motion is denied without prejudice.

## BACKGROUND

On May 27, 2025, Plaintiff initiated this action by filing the complaint. (Doc. 1.) Plaintiff is an entity that held the exclusive commercial license to distribute and authorize the public display of a particular Ultimate Fighting Championship broadcast ("the Program") on June 1, 2024. (*Id.* ¶ 3.) The three defendants are alleged to be the owners and/or operators of an establishment in Tempe, Arizona known as "Tacos Calafia." (*Id.* ¶¶ 4-6.) The complaint alleges that "Defendants willfully engaged in wrongful acts to intercept and/or receive the Program for free or at a nominal cost or assisted in such actions, while Plaintiff's legitimate customers paid substantially more for the proper commercial sublicense." (*Id.* ¶ 13.)

On July 1, 2025, a process server attempted to serve Vasquez-Cortez, Lopez, and Vortez at a particular address in Buckeye, Arizona ("the Buckeye Residence"). (Doc. 13 at 1; Doc. 14 at 1; Doc. 15 at 1.) "The server spoke with a 'John Doe,' current resident, who refused to provide his name. At the time of service, he said Christian [Vasquez-Lopez] was not home and Celese [Lopez] did not live at the address. He also said Christian [Vasquez-Lopez] is his girlfriend's son." (*Id.*) The process server described John Doe as a white male in his 40s, 6'1", 250 pounds, with blond hair in a man bun. (*Id.*)

On August 28, 2025, a process server made a second attempt to serve Vasquez-Cortez, Lopez, and Vortez at the Buckeye Residence. (Doc. 13 at 2; Doc. 14 at 2; Doc. 15 at 2.) That attempt was unsuccessful, and the process server's affidavit provides: "No answer at the door. No cars are present. A video doorbell is present, but the house is dark. I heard dogs bark and then go quiet real quickly. Tons of leaves are on the front porch, and there was no answer at neighbor." (*Id.*)

On August 29, 2025, a process server made a third attempt to serve Vasquez-Cortez, Lopez, and Vortez at the Buckeye Residence. (*Id.*) That attempt was unsuccessful, and the process server's affidavit provides: "No answer at the door, dogs barked, but then were quieted quickly, occupant refused to engage. No cars are present." (*Id.*)

On September 2, 2025, a process server made a fourth attempt to serve Vasquez-Cortez, Lopez, and Vortez at the Buckeye Residence. (*Id.*) That attempt was unsuccessful, and the process server's affidavit provides: "No answer at the door, the blinds are all open, dogs barked continually the whole time I was there, no vehicles are present." (*Id.*)

On September 5, 2025, a process server made a fifth attempt to serve Vasquez-Cortez, Lopez, and Vortez at the Buckeye Residence. (*Id.*) That attempt was unsuccessful, and the process server's affidavit provides: "No answer at the door, the dogs are barking inside, and no vehicles are presen.t [sic] The neighbor verifies that a couple lives there, but names are unknown." (*Id.*)

On October 3, 2025, a process server attempted to serve Vasquez-Cortez, Lopez, and Vortez at Tacos Calafia, which is located at 414 S. Mill Avenue, Suite 115, Tempe,

Arizona.  (Doc. 13 at 3; Doc. 14 at 3; Doc. 15 at 3.)  The server spoke to a cashier, who stated that each individual "Defendant was unavailable" and also stated that each individual Defendant "is co-owner of Taco Calafia."  (Doc. 13 at 3; Doc. 14 at 3.  *See also* Doc. 15 at 3 [same].)

On October 31, 2025, Plaintiff filed the pending motion for leave to serve by alternative means, which requests leave to serve Vasquez-Cortez via certified mail or delivery service and first-class mail to the Buckeye Residence and to serve Lopez and Vortez via certified mail or delivery service and first-class mail to Tacos Calafia.  (Doc. 16.)  Plaintiff attaches, an exhibit, what purports to be a photo posted on a Facebook page associated with "Celeste Lopez."  (Doc. 16-1 at 2.)  The photo depicts a man with dark hair holding and kissing a child.  (*Id.*)  The man is tagged in the photo as "Christian Vasquez" and his hair tied up in a bun.  (*Id.*)  The photo bears the caption: "My boys ♥."  (*Id.*)

## DISCUSSION

I.    <u>Legal Standard</u>

Rule 4(e) of the Federal Rules of Civil Procedure provides that an individual (with exceptions not relevant here) may be served in a judicial district of the United States by:

(1)    following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made; or

(2)    doing any of the following:

(A)    delivering a copy of the summons and of the complaint to the individual personally;

(B)    leaving a copy of each at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there; or

(C)    delivering a copy of each to an agent authorized by appointment or by law to receive service of process.

Under Rule 4.1(d) of the Arizona Rules of Civil Procedure, an individual may be served within Arizona using the same methods outlined in Rule 4(e)(2) of the Federal

- 3 -

Rules.

Rule 4(h)(1) of the Federal Rules of Civil Procedure provides that an unincorporated association in a judicial district of the United States must be served "by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process and—if the agent is one authorized by statute and the statute so requires—by also mailing a copy of each to the defendant" or "in the manner prescribed by Rule 4(e)(1) for serving an individual," which permits service under state law.  Rule 4(i) of the Arizona Rules of Civil Procedure governs unincorporated associations and mirrors the federal rule.

Rule 4.1(k) of the Arizona Rules provides for alternative means of service:  "If a party shows that the means of service provided in Rule 4.1(c) through Rule 4.1(j) are impracticable, the court may—on motion and without notice to the person to be served—order that service may be accomplished in another manner," in which case "the serving party must make a reasonable effort to provide the person being served with actual notice of the action's commencement" and must, at a minimum, "mail the summons, the pleading being served, and any court order authorizing an alternative means of service to the last-known business or residential address of the person being served."

Arizona's Rule 4.1(k) requires a showing of impracticability.  Impracticability in this context requires "something less than a complete inability to serve the defendant" and even "something less than the 'due diligence' showing required before service by publication may be utilized."  *Blair v. Burgener*, 245 P.3d 898, 901, 903-04 (Ariz. Ct. App. 2010).  In the context of Rule 4.1(k), "impracticable" simply means that the traditional means of service have proved to be "extremely difficult or inconvenient."  *Id.* at 903.

II.    Analysis

Even though impracticability is not a terribly difficult standard to satisfy, Plaintiff has failed to make the required showing on this record.

Plaintiff provides no explanation for why it initially came to view the Buckeye Residence as the likely home address of Vasquez-Cortez and/or Lopez.  Nor does

Plaintiff's motion explain why the few evidentiary materials before the Court—namely, the process server's affidavits and the Facebook photo—should be deemed sufficient to establish impracticability.   The only reasoned analysis appearing in the motion is the following passage: "As evidenced in the process server's affidavits, the Defendants have notice of the lawsuit and are actively evading service. See Doc. No. 13 (wherein a white male with a man bun stated that Vasquez-Cortez was not home) and Exhibit A (photo of Vasquez-Cortez with his hair in a man bun); Doc. No. 13-15 (wherein the person in charge at Tacos Calafia located at 414 S. Mill Avenue, Suite 115, Tempe, AZ 85281-2849 stated Vasquez-Cortez and Lopez were unavailable but confirmed both own the establishment)." (Doc. 16 at 3.)

This meager explanation fails to establish that Vasquez-Cortez and Lopez are "actively evading service."   Beginning with Lopez, it appears that Plaintiff initially (for unspecified reasons) believed that Lopez resided at the Buckeye Residence; that "John Doe" then stated otherwise during the first service attempt, by specifically denying that Lopez lived there; that Plaintiff nevertheless sent the process server back to the Buckeye Residence four more times in an attempt to serve Lopez there; and that the process server then unsuccessfully attempted to serve Lopez at Tacos Calafia.   For what it's worth, Plaintiff now appears to accept that Lopez does *not* reside at the Buckeye Residence—the motion for alternative service only asks for permission to serve Vasquez-Cortez via mail sent to the Buckeye Residence, whereas the motion seeks to serve Lopez via mail sent to Tacos Calafia.   The Court cannot see how Lopez could be deemed to be "actively evading service" where Plaintiff has made little (if any) effort to identify her actual residence and serve her there and has instead simply made one attempt to serve her at a business she co-owns.

The analysis as to Vasquez-Cortez admittedly presents a closer call, but it is unclear why Plaintiff appears to believe the outcome turns on the fact that both Vasquez-Cortez and "John Doe," his mother's boyfriend, wear their hair in man buns.  (Doc. 16 at 3.)  To the extent this is meant to emphasize a connection between the two men, that connection

- 5 -

is tenuous, at best.

At bottom, Plaintiff's accusation that Vasquez-Cortez is "actively evading service" would only make sense if Vasquez-Cortez resides at the Buckeye Residence. But the record is murky on that point (in part due to the unreasoned nature of Plaintiff's motion). True, the "John Doe" who identified himself as Vasquez-Cortez's mother's boyfriend, and who was described by the process server as a "current resident" of the Buckeye Residence, stated that Vasquez-Cortez "was not home" during the first service attempt. In isolation, this statement may suggest that Vasquez-Cortez also resides at the Buckeye Residence. However, a neighbor subsequently "verifie[d] that a couple lives there"—presumably Vasquez-Cortez's mother and her boyfriend[1]—but did not appear to mention whether another man (Vasquez-Cortez) lived there as well.

In short, Plaintiff's undeveloped motion fails to establish that locating and serving Defendants via traditional means would be impracticable. Any future motion for leave to serve via alternative means should, at a minimum, clearly identify the steps Plaintiff has taken to identify the actual residences of Lopez and Vasquez-Cortez.

Accordingly,

**IT IS ORDERED** that Plaintiff's motion for leave to serve via alternative means (Doc. 16) is **denied without prejudice**.

Dated this 5th day of December, 2025.

_____
Dominic W. Lanza
United States District Judge

---

[1] The Facebook post identifying Vasquez-Cortez and the child he is holding and kissing as Lopez's "boys" with a heart emoji (Doc. 16-1 at 2) suggests that Lopez and Vasquez-Cortez are a couple. But the fact that Vasquez-Cortez's mother's boyfriend appears to have told the process server that he is a "current resident" at the Buckeye Residence—and that Lopez is not—seems to preclude the possibility that Lopez and Vasquez-Cortez are the "couple" the neighbor verified lives there.